FILED'06 JUN 05 16:58usdc-orp

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| DAVID E. HALLBERG and NORA A. MULLANE, | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | Case No. 04-276-KI |
| vs. | ) ) | FINDINGS AND CONCLUSIONS |
| CITY OF PORTLAND, | ) ) ) | |
| Third-Party Defendant. | ) | |

Craig A. Crispin
Patty T. Rissberger
Crispin Employment Lawyers
9600 S. W. Oak Street, Suite 500
Portland, Oregon 97223

Kevin N. Keaney
700 N. E. Multnomah Street, Suite 1155
Portland, Oregon 97232

Attorneys for Third-Party Plaintiffs

David A. Landrum
Linda S. Law
City Attorney's Office
1221 S. W. Fourth Avenue, Room 430
Portland, Oregon  97204

       Attorneys for Third-Party Defendant

KING, Judge:

On June 1, 2006, I held a court trial on the claims third-party plaintiffs David Hallberg and Nora Mullane alleged against the City of Portland for defense and indemnification. The following are my findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52.

## FINDINGS OF FACT

David Hallberg was a housing inspector for the City. Nora Mullane, his wife, was a supervisor of housing inspectors but never supervised Hallberg. Hallberg opened a housing case on Dana Turner's house at 865 N. Terry ("N. Terry"). After fines mounted from the numerous violations Hallberg posted on N. Terry, Turner's financial situation worsened, her mortgage was foreclosed, and she was evicted. Hallberg and Mullane purchased N. Terry after the foreclosure. Hallberg rehabilitated the house and the couple sold it.

The City received a complaint that Hallberg was purchasing homes that he had posted for violations. The City began investigating using City investigators and eventually hired a private investigation company. The investigation included the examination of housing inspection files, deeds and title searches, employment records, and computers and emails. The investigators also interviewed Hallberg, Mullane, other City employees, homeowners subjected to Hallberg's

Page 2 - FINDINGS AND CONCLUSIONS

inspections, and people associated with the homeowners. A written report was issued on

December 30, 2003. The City subsequently terminated Hallberg and suspended Mullane. On

appeal, Hallberg's termination was affirmed but Mullane's discipline was completely reversed.

Turner filed this action against Hallberg and Mullane on February 25, 2004, alleging

claims for a due process violation and unjust enrichment. Hallberg and Mullane tendered their

defenses to the City under ORS 30.287(1). Mark Stairiker, Risk Supervisor of the Liability

Claims Section for the City's Bureau of Risk Management, reviewed the documents and report

from the prior investigation, applicable rules and statutes, and the proposed discipline letter.

Stairiker also spoke to Denise Kleim, an Administrative Manager in the housing inspector's

bureau, about the existence of any policies concerning housing inspectors purchasing houses they

have cited or which have an open case from another inspector. Kleim told Stairiker the rule was

that the inspectors could not buy any house in their area or any house in other areas which had an

open case. Four or five supervisors told Stairiker that they agreed that Kleim correctly stated the

policy. Stairiker also invited Hallberg's and Mullane's attorneys to submit any supplemental

materials that they wanted him to consider in his coverage analysis.

On May 19, 2004, after reviewing this material, Stairiker notified the attorneys that the

City declined to defend or indemnify Hallberg and Mullane.

On March 28, 2005, I granted Hallberg's and Mullane's motions for summary judgment,

dismissing all of Turner's claims but giving her leave to replead. On April 20, 2005, Turner filed

an Amended Complaint alleging claims against Hallberg for constitutional violations of equal

protection (selective enforcement and class of one) and the right to travel, the intentional

infliction of emotional distress, and intentional interference with contract. Turner did not allege

Page 3 - FINDINGS AND CONCLUSIONS

any claims against Mullane in the amendment. On August 30, 2005, I granted part of Hallberg's motion for summary judgment and dismissed the right to travel and equal protection (selective enforcement) claims. On September 6, 2005, Hallberg again made a request for a defense and indemnification, which the City declined.

The remaining three claims were tried to a jury, which rendered a verdict on April 19, 2006 in Turner's favor, awarding economic, noneconomic, and punitive damages on each claim.

## CONCLUSIONS OF LAW

I.     Nature of the Investigation

The Oregon Tort Claims Act ("OTCA") contains a provision describing the duty of a public body to defend and indemnify public employees:

> (1) The governing body of any public body shall defend, save harmless and indemnify any of its officers, employees and agents, whether elective or appointive, against any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of duty.

> (2) The provisions of subsection (1) of this section do not apply in case of malfeasance in office or willful or wanton neglect of duty.

ORS 30.285. For local public bodies, the statute continues:

> (1) If any civil action, suit or proceeding is brought against any officer, employee or agent of a local public body other than the state which on its face falls within the provisions of ORS 30.285(1), or which the officer, employee or agent asserts to be based in fact upon an alleged act or omission in the performance of duty, the officer, employee or agent may file a written request for counsel with the governing body of the public body. The governing body shall thereupon engage counsel to appear and defend the officer, employee or agent unless after investigation it is determined that the claim or demand does not arise out of an alleged act or omission occurring in the performance of duty, or that the act or omission complained of amounted to malfeasance in office, or willful or wanton neglect of duty, in which case the governing body shall reject defense of the claim.

(2) [employee's duty to cooperate]

(3) If the governing body rejects defense of a claim under subsection (1) of this section, no public funds shall be paid in settlement of the claim or in payment of any judgment against such officer, employee or agent.  Such action by the governing body shall not prejudice the right of the officer, employee or agent to assert and establish in an appropriate proceeding that the claim or demand in fact arose out of an alleged act or omission occurring in the performance of duty, or that the act or omission complained of did not amount to malfeasance in office or willful or wanton neglect of duty, in which case the officer, employee or agent shall be indemnified by the public body against liability and reasonable costs of defending the claim.

ORS 30.287.

"[T]he requirement of an investigation cannot be satisfied by a mere review of the allegations against an employee who tenders a defense."  Genesis Indemnity Insurance Co. v. Deschutes County, 194 Or. App. 446, 452 n.4, 95 P.3d 748 (2004).  The City went much further, relying on a through and well documented investigation performed by a private investigator, a review of applicable rules and statutes, and the opportunity for Hallberg and Mullane to respond. The fact that the private investigator's report was written prior to Turner filing this action is of no importance because none of the relevant facts changed in the interim.  I conclude that the investigation was an appropriate one for the City to use in making the determination.

II.     Evidence

Over Hallberg's objection, I decided at the court trial that I could rely on my memory of the evidence proffered at Turner's jury trial.  Although the City did not participate in that trial, and thus did not cross examine witnesses or have the opportunity to object, the City stipulated to my reliance on the evidence.  Because the two trials were bifurcated for efficiency, and Hallberg fully participated at the jury trial, I see no reason to clear my memory of that evidence.  In

contrast, Mullane did not participate in the jury trial so I will not rely on its evidence in determining her claim against the City.

III.    Hallberg

The jury awarded Turner punitive damages based on the following instruction:

> You may award punitive damages only if you find that defendant's conduct was malicious, or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that [his] actions will violate the plaintiff's rights.

Jury Instruction No. 25.

This determination is an adequate basis for me to decide that Hallberg's actions constituted malfeasance. Alternatively, there are numerous pieces of evidence on which I conclude that Hallberg's actions constituted malfeasance.

The first is the number of inspections Hallberg made to N. Terry, including on the day of eviction. I give little credence to Hallberg's explanation of why he needed to go to Turner's home on the day she was evicted. I also note Stairiker's determination that some of the citations there were "picky."

I believe Turner's account that Hallberg told her that the fine would be charged monthly, that he would inspect monthly, and that if Turner did not correct the problems that the fines would reach a level such that the City would take her home. I disbelieve Hallberg's denial of this statement. During the time in question, the City had no practice or policy of foreclosing on liens associated with housing cases.

Page 6 - FINDINGS AND CONCLUSIONS

Scott Ellertson, Hallberg's supervisor at times, counseled Hallberg concerning overzealous enforcement that appeared to be caused by Hallberg's altercation with a resident. Ellertson believed that Hallberg was keeping housing cases open longer than necessary because he was interested in the properties.

Mullane cautioned Hallberg that she was concerned about the appearance of a conflict of interest. Hallberg's disclosure of his intent to supervisors was far from complete.

The following is evidence of Hallberg's motive when inspecting N. Terry and speaking to Turner.

Evidence from Arthur Palmer that Hallberg called him to try to pressure Palmer into selling his home. When Palmer refused to sell, Hallberg began inspecting and citing his property.

Hallberg's citation of the Hays property, and his later purchase of the house for $1,300, when Hays was clearly incompetent due to advanced age and mental disabilities to enter into this type of transaction.

Hallberg's attempt, after citing the house, to get an ownership interest in Sam Tabshy's home, leaving Tabshy with a life estate. Hallberg did this in spite of Tabshy's advanced age and mental incompetency, even after Hallberg was told by senior services employees assisting Tabshy that the attempt to take his home was unethical.

Moreover, I am appalled, and not persuaded to be lenient, by the fact that other housing inspectors purchased homes which had open housing cases.

Page 7 - FINDINGS AND CONCLUSIONS

I conclude that Hallberg's actions with respect to N. Terry that led to his purchase of the home constituted malfeasance. Consequently, the City is not obligated to defend or indemnify Hallberg in this action.

IV.    Mullane

In the Complaint, Turner alleged:

> Mullane, at all times, was aware of Hallberg's actions and wrongful purpose of targeting such homes. As Hallberg's supervisor, she could have stopped him from engaging in such conduct, but did not. At some point in time, Mullane did take ineffective steps to get Hallberg to cease such activity, but nonetheless she knowingly and willingly accepted the fruits of Hallberg's wrongful conduct.

Complaint ¶ 13(c). It is undisputed that Mullane supervised other housing inspectors but never supervised Hallberg.

Turner's theory was that Mullane should have reported the appearance of a conflict of interest to either her supervisor or Hallberg's supervisor. She did neither. I conclude that the failure to report would be nonfeasance, not malfeasance. I also conclude that the failure does not rise to the level of willful or wanton neglect of duty. Thus, the question of indemnity hinges on whether Turner's claim arose out of an alleged act or omission occurring in Mullane's performance of duty.

Three requirements must be met to conclude that an employee is acting within the scope of employment: (1) the conduct must have occurred substantially within the time and space limits authorized by the employment; (2) the employee must have been, at least partially, motivated by a purpose to serve the employer; and (3) the act must have been of a kind the

employee was hired to perform. Lourim v. Swensen, 328 Or. 380, 385, 977 P.2d 1157 (1999)

(quoting Chesterman v. Barmon, 305 Or. 439, 442, 753 P.2d 404 (1988)).

The City's letter of March 11, 2004 suspending Mullane stated:

> During your employment with the City of Portland, you purchased
> properties to renovate for resale or rental. You were aware that your husband, an
> inspector in the Housing program where you worked, inspected and cited these
> properties for violations. You were also aware that you and your husband had
> access to information not readily available to the general public. You did not
> come forward and inform or inquire of your supervisor your intent to participate
> in purchasing these properties. You did not exercise the higher level of judgment
> expected by supervisory employees in following the state code of ethics, City
> Code and rules. Finally, you received financial benefit from your position with
> the City.

Ex. 110.

A fair reading of both the Complaint and the suspension letter is that Mullane was

disciplined and sued not only for the fact that her name is on the title of N. Terry but also for the

fact that she did not report the conflict of interest created by Hallberg's pursuit of the housing

case. Moreover, the City noted the higher level of judgment expected of supervisors. I conclude

that Turner's claim arose out of an omission occurring in Mullane's performance of duty. Thus,

Mullane is entitled to a defense.

I also do not agree with the City's argument that Mullane's legal fees should be cut off as

of the date of the summary judgment decision. Her attorney had to keep informed of events in

the case, including the claims in the Amended Complaint (which could have included Mullane)

and the possibility of settlement, so that he could properly represent Mullane at the court trial. I

ask Mullane and the City to confer on the final amount of her reasonable costs of defending this

action, to the present.

Page 9 - FINDINGS AND CONCLUSIONS

V.    Judgment

That leaves the issue of Hallberg's objections to Turner's proposed Judgment. I would like to address the objections on a more formal basis, with the parties citing to appropriate case law and Federal Rules of Civil Procedure. Rather than file a Judgment and wait for motions to be filed against it, I will put in place the following schedule for motions to be filed against the Verdict. Hallberg[1] must file all motions by June 16; Turner may respond by June 30; Hallberg may reply by July 14.

## CONCLUSION

The City is required to provide a defense to Mullane but is required neither to defend nor indemnify Hallberg.

Dated this _____ day of June, 2006.

_____
Garr M. King
United States District Judge

---

[1] If the City plans to object to my ruling at this level, as opposed to an appeal to the Ninth Circuit, it should follow the schedule for Hallberg.