IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| DANA TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-276-KI |
| | ) | |
| STATE OF OREGON, Acting by and through the Department of Justice, | ) ) | OPINION AND ORDER |
| | ) | |
| Intervenor Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID E. HALLBERG, and NORA A. MULLANE, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAVID E. HALLBERG, NORA A. MULLANE, | ) ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |

Page 1 - OPINION AND ORDER

| | |
|---|---|
| CITY OF PORTLAND, | ) |
| | ) |
| Third-Party Defendant. | ) |
| | ) |

>       Charles J. Merten
>       1015 S.W. Yamhill Street
>       Portland, Oregon  97205
>
>               Attorney for Plaintiff
>
>       Michael W. Grant
>       Marilyn K. Odell
>       State of Oregon
>       Department of Justice
>       1162 Court Street, N.E.
>       Salem, Oregon  97301-4096
>
>               Attorneys for Intervenor Plaintiff
>
>       Craig A. Crispin
>       Patty T. Rissberger
>       500 Plaza West, 9600 S.W. Oak Street
>       Portland, Oregon  97223
>
>               Attorney for Defendant and Third-Party Plaintiff David E. Hallberg
>
>       Kevin N. Keaney
>       700 N.E. Multnomah Street, Suite 1155
>       Portland, Oregon  97232
>
>               Attorney for Defendant and Third-Party Plaintiff Nora A. Mullane
>
>       David A. Landrum
>       Linda S. Law
>       City of Portland
>       City Attorney's Office
>       1221 S.W. Fourth Avenue, Suite 430
>       Portland, Oregon  97204
>
>               Attorneys for Third-Party Defendant

Page 2 - OPINION AND ORDER

KING, Judge:

On April 19, 2006, the jury returned a verdict finding for plaintiff Dana Turner on all three claims and awarding damages against David Hallberg totaling $8.66 million. Before the court is Defendant Hallberg's Motion for Judgment Notwithstanding the Verdict or, in the alternative, for New Trial (#252). For the reasons below, I grant remittitur concerning the amount of punitive damages and deny the rest of the motion.

## LEGAL STANDARDS

A motion for judgment as a matter of law must be denied, and a jury's verdict must be upheld, if the verdict is supported by substantial evidence. Johnson v. Paradise Valley Unified School District, 251 F.3d 1222, 1227 (9th Cir.), cert. denied, 534 U.S. 1035 (2001). Substantial evidence is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion from the same evidence. The court must review the record as a whole but disregard all evidence favorable to the moving party that the jury is not required to believe. All reasonable inferences must be drawn in favor of the nonmoving party. Moreover, the court may not substitute its view of the evidence for the jury's, may not make credibility determinations, and may not weigh the evidence. Id.

Even if a verdict is supported by substantial evidence, the court may grant a motion for a new trial if it concludes that the verdict is contrary to the clear weight of the evidence, is based on evidence which is false, or to prevent a miscarriage of justice. Silver Sage Partners v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001). The court may weigh the evidence, may evaluate the credibility of the witnesses, and is not required to view the evidence from the

perspective most favorable to the prevailing party.  United States v. Kellington, 217 F.3d 1084, 1095 (9th Cir. 2000).

Remittitur is available to correct excessive verdicts.  Pershing Park Villas v. United Pacific Insurance, 219 F.3d 895, 905 (9th Cir. 2000).  A trial court reviewing a damages award attacked as excessive must consider the evidence of damages in a light most favorable to the prevailing party.  Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir. 1987), opinion amended on other grounds, 817 F.2d 609 (9th Cir. 1987).

If the court concludes that a damages award is excessive, it may either grant the defendant's motion for a new trial, or deny the motion, conditioned upon the prevailing party's acceptance of a remittitur.  Silver Sage Partners, 251 F.3d at 818.  A trial court granting a motion for remittitur does not substitute its judgment for that of the jury, but instead reduces the judgment to the maximum amount sustainable by the proof.  D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982) (citations omitted).

## DISCUSSION

I will bypass Turner's argument that Hallberg waived some of his motions for judgment as a matter of law under Rule 50 because he failed to make the motion at the close of evidence.  Neither party furnished me with a transcript.  Because Hallberg does not prevail on the merits of the arguments, I will proceed to that step.

I.      Evidentiary Issues

Hallberg moves for a new trial based on several evidentiary rulings he contends were in error.

Hallberg objects to the extensive "other bad acts" evidence admitted and contends that the jury found him liable in part because of the actions of others. Turner argues that this evidence was properly admitted to disprove that Hallberg was "just doing his job," as his lawyer claimed in his opening statement.

I agree that this evidence was relevant to show motive and intent. Moreover, its probative value was not substantially outweighed by the danger of unfair prejudice. Its admission was not an error.

Hallberg contends that Plaintiff's Ex. 116, the City of Portland's Risk Management letter, should not have been admitted because it was untrustworthy, created for the purpose of avoiding liability, and overly prejudicial with little probative value.

The Clerk's List of Exhibits shows that Ex. 116 was not received.

Hallberg contends that Defendant's Ex. 48, photos of the vandalized house, should have been admitted because the photos were relevant to damages. Hallberg argues it was disputed that vandals caused the damage and that this possibility should have gone to the weight of the evidence rather than used to exclude the photos. Turner contends that the photographs are not material because there is no evidence that she vandalized the house or that the vandalism occurred when she was in physical control of the house.

During trial, I ruled that Hallberg could only have the photos admitted if he could lay a foundation that they accurately represent the condition of the house at a time that Turner was living there under usual circumstances. Although Hallberg doubts Turner's testimony concerning the vandalism, he was unable to lay the foundation. Without that foundation, the

Page 5 - OPINION AND ORDER

probative value of the photos was substantially outweighed by the danger of unfair prejudice. I am unpersuaded that the ruling was incorrect.

Hallberg contends that Defendant's Exs. 23-41 that address rehabilitation expenses should have been admitted because the jury was entitled to know that he made little, if any, profit. Hallberg argues that this evidence is relevant to the punitive damages amount. Turner argues that the evidence is not relevant.

I agree that evidence about how much profit Hallberg made on the house is not relevant to Turner's damages caused by losing the home. It is also not relevant to the punitive damages issue because the amount of profit would be reflected in Hallberg's net worth that was provided to the jury.

Hallberg objects to the admission of evidence relating to the Oregon State Ethics Commission findings. He contends that Turner established no nexus between any of the violations recited in the evidence and any harm to her. Hallberg also notes that the document was a negotiated settlement. Turner notes that the limited admission of a fact agreed to by Hallberg with the State Ethics Commission–that he did not give written notice to his supervisor of his desire to purchase Turner's home after inspecting it–was proper. Other parts of the document were not made known to the jury. Turner also notes that Hallberg testified that he settled the ethics matter for $2,000 so there was no prejudice caused by the document being admitted.

The admitted fact was relevant because it undercut Hallberg's argument that he had disclosed to his supervisor his intent to purchase the house. Appropriate precautions were taken concerning the rest of the document. I am not persuaded that any error was committed.

Page 6 - OPINION AND ORDER

Hallberg objects to the admission of the City Ethics Code, as well as the jury instruction concerning it, because the Code is only advisory. He claims that the jury likely considered the Code to have the force of law. Turner contends that the advisory nature of the Code is not relevant and that the Code is very similar to the state statute forbidding public employees from using their position or confidential information for personal gain.

The intentional interference with contractual relations claim requires proof of improper means or an improper purpose. The jury instructions defined improper means to be conduct that violates a statute or other regulation, a recognized rule of law, or an established standard of a trade or profession. The City Ethics Code, even though it was advisory, is an established standard of a profession. Its admission was not in error.

II.     Statute of Limitations

Hallberg seeks judgment as a matter of law on Turner's equal protection claim, contending that the statute of limitations bars it. He argues that Turner's claim accrued, at the latest, when she lost her house to foreclosure in January 2002 because at that point Turner knew she was injured, knew that Hallberg caused her injuries, and knew that Hallberg was a city employee. Turner filed this action on February 25, 2004. All agree that the statute of limitations for all claims is two years. See ORS 12.110(1).

Alternatively, Hallberg seeks a new trial in which the jury is foreclosed from imposing liability or assessing damages on the basis of acts occurring outside the limitations period. Hallberg would limit evidence of his conduct to the single trash citation on March 19, 2002 and would prohibit evidence of any events occurring before February 25, 2002.

Turner contends that her claim did not accrue when she knew that a government employee was causing her emotional upset. She argues that her claim only accrued when she learned from a city investigator that Hallberg had purchased her home, thus revealing the tortious nature of his conduct. This date was well within the limitations period.

"Under federal law, the limitations period accrues when a party knows or has reason to know of the injury which is the basis of the cause of action." Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996) (internal quotation omitted). In Kimes, plaintiff sued a group of attorneys and a judge for allegedly conspiring to cheat him out of his inheritance by their actions in a case before the court in 1990 and 1991. Although plaintiff did not file suit until 1994, the court held that plaintiff was within the one-year statute of limitations because he did not know of the alleged conspiracy to deprive him of his constitutional rights until mid-June 1994, even though he was involved in the earlier underlying litigation. Id.

Turner's situation is similar to that in Kimes. Although Turner knew that Hallberg had cited her and that she had lost the house, she did not know Hallberg's motive for the citations until well after the fact when she learned he bought her house. Consequently, Turner did not know of her constitutional injury until then. Her action is not barred by the statute of limitations.

Hallberg relies on T.R. v. Boy Scouts of America, 205 Or. App. 135, 133 P.2d 353 (2006), in which the court held that a former Boy Scout's claim accrued against the city when he knew that the Scout was sexually abused by a city police officer who worked with the Scout troop as part of his duties. These facts triggered a reasonable person's duty to seek advice in the legal community. Id. at 142-43. In T.R., an adult's sexual abuse of a minor is always tortious so the party has reason to know that he has been tortiously injured as soon as the abuse happens. On

Page 8 - OPINION AND ORDER

the contrary, a city inspector's citation of housing violations is rarely tortious. Turner had no reason to think she had been tortiously injured until she learned that Hallberg had purchased her house, thus disclosing his intent. Turner filed her claims within the statute of limitations.

I deny the motion. The verdict is supported by substantial evidence and is not contrary to the weight of the evidence.

I also deny Hallberg's motion against the two state tort claims on the statute of limitations ground for the same reason. See Doe v. American Red Cross, 322 Or. 502, 513, 910 P.2d 364 (1996) (under the discovery rule, statute of limitations does not begin to run until a plaintiff is on notice of defendant's tortious conduct).

III.    Equal Protection Claim

Hallberg contends that he is entitled to judgment as a matter of law on Turner's equal protection claim because Turner failed to prove that she was treated differently than others similarly situated and that no rational basis exists for the difference in treatment.

There was adequate evidence for the jury to infer that Hallberg paid much closer attention to the violations at Turner's home than he did to other possible violations on the street which Turner pointed out to him. I deny the motion.

Hallberg contends that he is entitled to qualified immunity, and thus judgment as a matter of law, because Turner did not prove that he violated any clearly established statutory or constitutional right, particularly in light of the fact that he received explicit approval from his superiors for the purchase.

I previously concluded in my rulings from the court trial that Hallberg's disclosure was incomplete. Moreover, Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073,

Page 9 - OPINION AND ORDER

145 L. Ed. 2d 1060 (2000), was decided in February 2000 and cites to cases decided as early as 1923 which recognize equal protection claims for a "class of one." The jury's verdict makes it clear they decided that Hallberg cited Turner's house for the purpose of forcing her out so he could purchase it. The fact that the violations were all valid does not sanitize his intent. Hallberg is not entitled to qualified immunity.

IV.     Intentional Infliction of Emotional Distress

Hallberg seeks judgment as a matter of law against the intentional infliction of emotional distress claim for the reason that his conduct is not extraordinarily beyond the bounds of socially tolerable behavior. Hallberg argues that the enforcement activities cannot constitute the outrageous conduct because to so hold would subject every government employee to liability for doing their job. Other than the citations, Hallberg claims that the only other conduct is a single conversation he had with Turner.

Hallberg's argument forgets the fact that he purchased Turner's home. If he had not done so, Turner would likely not have a claim based solely on Hallberg's enforcement activity. There is substantial evidence to support the jury verdict on this claim.

V.      Economic Damages

The jury awarded $40,000 in economic damages on the equal protection claim, $130,000 on the intentional interference with contractual relations claim, and $220,000 on the intentional infliction of emotional distress claim.

Hallberg contends that he is entitled to judgment as a matter of law because Turner failed to prove a causal connection between his conduct and her economic damages. Specifically, Hallberg contends that Turner offered no evidence of paying any of the citations and no evidence

that Hallberg compelled her to voluntarily quit her jobs, leading to her failure to make mortgage payments.

Turner contends that Hallberg's conduct was the substantial factor causing her to leave her jobs and to be unable to make her mortgage payments.

I agree that Turner's theory of the case is a reasonable inference, based on substantial evidence, that the jury could have drawn. There was also testimony that Turner quit to stay home and try to improve the situation so that she could keep the house. I deny the motion based on the lack of causation ground.

Hallberg next moves for judgment as a matter of law or, alternatively, for a new trial limited to damages. He contends that the economic damages awarded by the jury are far in excess of any rational connection to the evidence of economic loss presented at trial. He claims that the only evidence of economic loss is the house appraisals, which were at most $165,000. Hallberg also notes that there is no evidence of what Turner owed on the house so the jury could not have determined her equity in it. Hallberg argues that the economic damages awarded on the intentional infliction of emotional distress claim should be reduced to zero because Turner offered no evidence of economic loss relating to that claim. Finally, Hallberg contends that the jury awarded duplicative awards of economic damages on each of Turner's three claims.

Turner contends that the economic damages award is supported not only by evidence of the value of her home but of testimony from her family members that she is so traumatized that she is unable to work. According to Turner, even if her attorney did not argue for lost wages as part of the damages, the jury could have included lost wages based on the evidence. Concerning the value of the house, Turner notes that Hallberg should have offered evidence to prove that the

Page 11 - OPINION AND ORDER

value to Turner in the home's equity was less than the appraisal. Concerning the duplicated damages argument, Turner argues that Hallberg cannot now complain when he did not object to the form of the verdict, the form of the instructions, or when the verdict was received so that the jury could have been reinstructed prior to its release. Turner also contends that the jury may have decided that each violation caused a different part of her damages.

Defendants "bear a high burden to establish an irreconcilable inconsistency. . . . We must accept any reasonable interpretation of the jury's actions, reconciling the jury's findings by exegesis if necessary." Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1038 (9th Cir. 2003), cert. denied, 541 U.S. 902 (2004). I agree with Turner's arguments concerning ways to explain the awards. I also note that Hallberg proposed a verdict form which asked the jury to specify damages for each claim separately. Further, Hallberg did not object when I received the verdict. I decline to change the awards of economic damages.

VI.     Noneconomic Damages

The jury awarded $30,000 in noneconomic damages on the equal protection claim, $150,000 on the intentional interference with contractual relations claim, and $190,000 on the intentional infliction of emotional distress claim.

Hallberg contends that the jury made duplicative awards of noneconomic damages on Turner's three claims because the damages flowing from them all arise from the same conduct, the same impact, and the same damage.

Turner contends that the damages are not duplicated. She claims that the jury could have awarded only the severe emotional distress damages on the intentional infliction of emotional distress claim, and the nonsevere emotional distress damages on the other claims. Turner also

notes the difference between the constitutional right being protected in the equal protection claim and the right for her to contract with her mortgage lender in the intentional interference claim.

For the same reasons as stated for economic damages, I decline to change the awards of noneconomic damages.

VII.     Punitive Damages

The jury awarded $2,500,000 in punitive damages on the equal protection claim, $500,000 on the intentional interference with contractual relations claim, and $4,900,000 on the intentional infliction of emotional distress claim.

Hallberg contends that the punitive damages award, for a total of $7,900,000, must be stricken or reduced to a constitutionally permissible sum through remittitur. He contends that the award violates due process in light of the amount of other damages awarded. Hallberg also notes that at most, the jury could have concluded that his net worth was $292,770 when calculated separately from his wife.

Turner notes that the punitive damages award is 10.39 times the size of the compensatory damages award, a ratio that the United States Supreme Court has not held to be unconstitutional.

The Due Process Clause prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 416, 123 S. Ct. 1513 (2003). In reviewing a punitive damages award, a court must consider three guideposts:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

Id. at 418 (citing BMW of North America, Inc. v. Gore, 517 U.S. 559, 575, 116 S. Ct. 1589 (1996)).

The degree of reprehensibility of defendant's conduct is the "most important indicium" of the reasonableness of a punitive damages award. The factors to be considered are whether (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, deceit, or mere accident. Id. at 419.

Although the Court declined to establish a bright-line ratio which punitive damages cannot exceed, it noted that the jurisprudence has established that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." Id. at 425.

Accordingly, I first turn to the degree of reprehensibility of Hallberg's conduct. Hallberg caused economic harm to Turner, in the loss of the home and lost wages, but he also caused emotional distress that was so severe that Turner attempted suicide. His conduct was intended to force a family from their home. This demonstrates an indifference to or reckless disregard of the health and safety of others. Prior to the citations, Turner worked multiple jobs at once to keep her household financially afloat. Thus, she was financially vulnerable. Hallberg's conduct involved repeated citations and visits to the home, including on the day Turner was formally evicted. Based on the award of punitive damages, the jurors decided that the harm was the result

of intentional malice. I agree with that assessment. Taking all of the factors into account, Hallberg's conduct resulted in a significant degree of reprehensibility.

The second factor, the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, is typically analyzed by comparing the ratio of compensatory to punitive damages. Zhang, 339 F.3d at 1042. The jury award of $7,900,000 in punitive damages is 10.4 times the award of $760,000 in compensatory damages. Although that ratio is not huge, it is at the upper limit of awards that have been found to be constitutional.

> The Court has refused to give a precise mathematical guideline for the 'constitutionally acceptable range,' but the two cases in which the Court struck down punitive damages awards both involved rather large ratios of punitive to compensatory damages: in BMW, the ratio was a 'breathtaking 500 to 1,' in State Farm, the ratio was 145 to one. Likewise, in Cooper Industries, where the Court questioned the size of the award but declined to rule on its constitutionality, the ratio was ninety to one.
>
> Despite its refusal to establish a firm numerical limit to the ratio, the BMW Court noted that precedent 'suggested that the relevant ratio was not more than 10 to 1.'

Id. at 1044 (internal citations omitted) (approving punitives damages with a ratio of slightly more than seven to one).

The third factor is the difference between the punitive damages award and civil penalties in comparable cases. Although the parties have not provided argument on this factor, I note that Oregon's government standards and practices statute provides for a civil penalty of $1,000 per violation. ORS 244.350(1)(a). Hallberg stipulated to a $2,000 civil penalty without admitting any liability. Ex. 121. The difference between the punitive damages and the possible civil penalty is sizable.

Although the reprehensibility factor supports the jury's punitive damages award, the other two factors weigh in favor of finding that the award is grossly excessive. After considering all three factors, I find that the punitive damages award of $7,900,000 violates the Due Process Clause and must be reduced. I deny the motion for new trial on the grounds of excessive punitive damages, conditioned on Turner's acceptance of a remittitur in the punitive damages amounts to $210,000 on the equal protection claim, $840,000 on the intentional interference with contractual relations claim, and $1,230,000 on the intentional infliction of emotional distress claim.

///


///


///


///

Page 16 - OPINION AND ORDER

## CONCLUSION

Defendant Hallberg's Motion for Judgment Notwithstanding the Verdict or, in the alternative, for New Trial (#252) is granted in part and denied in part. By July 28, 2006, I ask Turner to inform the court and other counsel whether she wants to accept the remittitur or to go forward with a new trial limited to the issue of punitive damages.

The State of Oregon's Motion to Intervene (#254) is granted based on DeMendoza v. Huffman, 334 Or. 425, 51 P.3d 1232 (2002), which held that former ORS 18.540, now ORS 31.735, applies to state law claims that are adjudicated in federal court. We have two such claims in this action. Assuming that Turner accepts the remittitur, I ask the parties, including the State of Oregon, to jointly propose a Judgment by August 7, 2006, or if they cannot agree, to each submit a proposed Judgment by that day along with an explanation of their position on any disputes. If Turner wants to go forward with a limited new trial, we will hold a scheduling conference.

IT IS SO ORDERED.

Dated this    21st    day of July, 2006.

                                            /s/ Garr M. King
                                           Garr M. King
                                           United States District Judge