UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DANA TURNER**,                                                Civil Case No. 3:04-CV-00276-KI

               Plaintiff,

                                    OPINION AND ORDER

               v.

**DAVID E. HALLBERG**, an individual;
**KATHRYN C. HALLBERG**, an individual;
and **CLAY MCCASLIN**, as trustee,

               Defendants.


      Steven C. Burke
      Case & Dusterhoff, LLP
      9800 SW Beaverton Hillsdale Hwy., Suite 200
      Beaverton, Oregon  97005

      Charles J. Merten
      320 SW Stark Street, Suite 202
      Portland, Oregon  97204

            Attorneys for Plaintiff

J. Clay McCaslin
Law Office of J. Clay McCaslin
510 SW Fifth Avenue, Suite 500
Portland, Oregon  97204

S. Ward Greene
Greene & Markley, P.C.
1515 SW Fifth Avenue, Suite 600
Portland, Oregon  97201

   Attorneys for Defendants


KING, Judge:

   Plaintiff Dana Turner, in a Supplemental Complaint she filed after prevailing in a jury trial against defendant David Hallberg, seeks to invalidate four deeds of trust encumbering David Hallberg's property.  Pending before me is a motion for summary judgment filed by the other two defendants, Kathryn Hallberg and Clay McCaslin [348].

## UNDISPUTED FACTS

   Turner prevailed on her Section 1983 and common law tort claims against David Hallberg, a housing inspector for the City of Portland, who abused his position to purchase Turner's home.  The jury awarded a verdict against him in an amount totaling $8.66 million on April 19, 2006.  After granting remittitur on the punitive damage award, I entered a judgment against David Hallberg in Turner's favor for $3.04 million on August 10, 2006.

   Turner's Supplemental Complaint, filed on June 20, 2011, alleges a claim under Oregon's Uniform Fraudulent Transfer Act ("UFTA"), ORS 95.200 et. seq., against David Hallberg, his mother, Kathryn Hallberg, and the trustee, Clay McCaslin, and a claim of common law fraud against the Hallbergs.


Page 2 - OPINION AND ORDER

David Hallberg owned three properties in Portland, Oregon at the time Turner filed her original civil rights complaint in 2004. He granted deeds of trust to Kathryn Hallberg for loans he took from her, as follows: two loans purportedly made on May 1, 1999 in the amount of $50,000 each were secured by two deeds of trust recorded on October 7, 2005; a loan made on May 8, 2006 in the amount of $10,000 was secured by a deed of trust recorded on May 9, 2006; and a loan of $10,000 made on August 11, 2006 was secured by a deed of trust recorded on that date.

David Hallberg never made payments on the debts and Kathryn Hallberg took no action to collect them until, in 2010, Turner started collection proceedings on her judgment. Kathryn Hallberg initiated non-judicial foreclosures on the properties in January 2011.

In this Supplemental Complaint, Turner seeks to void the trust deeds, which secure the loans Kathryn Hallberg made to David Hallberg. Turner alleges the four deeds of trust are sham transactions intended solely to avoid Turner's attempts to collect her judgment. Less than a week before the sales, I entered a preliminary injunction halting the foreclosures initiated by Kathryn Hallberg.

In responses to defendants' interrogatories, Turner reported she learned of the trust deeds "by means of her attorney" and "[t]he dates she learned of the trust deeds is [sic] not known." McCaslin Reply Decl. Ex. 9, at 2. In addition, "[a]t least one of the trust deeds was not know[n] of until after entry of judgment against David Hallberg." Id.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial

burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate, through the production of probative evidence, that there remains an issue of fact to be tried. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." <u>Nicholson v. Hyannis Air Serv., Inc.</u>, 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

Defendants argue Turner's UFTA and common law fraud claims are barred by the statutes of limitations.

I.    <u>UFTA</u>

A transfer[1] or obligation (whether made before or after the creditor's claim arose) is fraudulent under the UFTA if it is made "with actual intent to hinder, delay, or defraud any creditor of the debtor." ORS 95.230(1)(a). Such a claim must be made "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant," or suffer extinguishment of the claim. ORS 95.280(1). Defendants assert Turner's UFTA claim has been extinguished by operation of the limitations period.

The parties dispute whether the limitations period began to run from when Turner knew or could reasonably have learned of the *transfers* or from when she knew or could reasonably

---

[1]"Transfer" is defined to include "the creation of a lien or encumbrance." ORS 95.200(12).

Page 4 - OPINION AND ORDER

have learned of the *fraudulent nature* of the transfers. The statute reads "transfer," but courts around the country have split on this question. See In re Maui Indus. Loan & Fin. Co., 454 B.R. 133, 137 (Bankr. D. Haw. 2011) ( "[m]ost courts interpreting versions of the Uniform Fraudulent Transfers Act . . . have held that the one year period does not begin to run until the fraudulent nature of the transfer is discovered or [is] reasonably discoverable" but citing cases coming down on both sides); State Farm Mut. Auto. Ins. Co. v. Cordua, __ F. Supp.2d __, 2011 WL 6009970, at *5 (E.D. Pa. Dec. 2, 2011) ("the majority of other jurisdictions have consistently held that the one-year savings provision does not begin to accrue until the creditor discovers or could have reasonably discovered the nature of the fraudulent transfer" and citing cases).

Oregon state courts have not offered an interpretation of ORS 95.280(1). However, applying either the date Turner knew or could reasonably have discovered the *transfer*s, or the date she knew or could reasonably have learned of the *fraudulent nature* of the transfers, her claim is barred.[2]

The undisputed facts showing Turner knew of the transfers or, alternatively, either knew or could reasonably have discovered the fraudulent nature of the transfers is as follows: Turner's attorney deposed the Hallbergs on April 7, 2006, in preparation for the trial on Turner's Section 1983 and tort claims later that month, questioning them both about the promissory notes and deeds of trust that existed at that time. Turner's attorney also questioned David Hallberg during the trial about the 1999 loans. Based on the testimony, Turner had actual notice that: (1) the

---

[2]For this reason, I decline Turner's invitation to certify the question to the Oregon Supreme Court.

Hallbergs are mother and son; (2) David Hallberg did not execute the promissory notes

contemporaneously with the funds that Kathryn Hallberg purportedly gave him in 1999;

(3) Kathryn Hallberg never requested repayment or made any attempt to collect those funds;

(4) Kathryn Hallberg did not expect repayment in consideration for the trust deeds and

considered the 1999 loans a gift; and (5) David Hallberg testified under oath as follows:

> Q: Okay. If you have been going along with a family agreement all this time,
> why did you, in October of –excuse me, why–yes, in October, why did you
> suddenly create this promissory note?
>
> A: To protect Mom's interest in the amount that I borrowed from her.
>
> Q: Could you explain that to me?
>
> A: I borrowed money from Mom in '99. That was her money, she was entitled to
> it, she had a claim on it, and I needed to make sure, under legal advice, that there
> was some protection to that in the event of anything. If I die, there's a record.
>
> Q: And if you lose this case, you have $100,000 less?
>
> A: No, Mom's interest is protected.
>
> Q: Well, your mother just testified that she has never asked you to repay the debt,
> is that correct?
>
> A: That's correct.

D. Hallberg Dep. 7:19-8:10 attached as Ex. 1 to McCaslin Decl. He also testified he had not

made any effort to repay the $100,000 because his mother "hasn't had need and made a demand."

Id. at 51:10.

As for the loans arising in May and August 2006, and recorded contemporaneously,

Turner knew: (1) about possible shenanigans with the previously recorded deeds of trust; (2) that

all of the trust deeds and promissory notes were recorded after Turner initiated litigation; (3) that

one of the deeds of trust was recorded after she had obtained a jury verdict of over $8 million

against David Hallberg; and (4) that one of the deeds of trust was recorded *the very day after*

judgment for over $3 million had been entered against David Hallberg.  I also emphasize that all

the deeds of trusts and promissory notes were recorded, putting Turner on constructive notice of

Kathryn Hallberg's interest, and all of them could easily have been discovered with a reasonable

amount of diligence.[3]  Finally, added to these facts is that Turner would not identify the date when

she discovered the transfers in her responses to interrogatories.

Turner argues that a cause of action does not accrue if a plaintiff does not know sufficient

facts to allege the cause of action, and that whether she knew or should have known of the fraud is

a question of fact for the jury.  See U.S. Nat'l Bank of Oregon v. Davies, 274 Or. 663, 666-67,

548 P.2d 966 (1976) ("cause of action" means when "every fact which it would be necessary for

the plaintiff to prove, if traversed, in order to support his right to judgment").  She suggests the

facts set forth above rise to only circumstantial evidence, and that the "badge of fraud" was when

Kathryn Hallberg took enforcement action on the notes and deeds of trust once Turner initiated

collection efforts in 2010.  She also says there are disputed issues of material facts remaining,

such as whether Turner knew, or should have known, the transfers were fraudulent, and whether

the Hallbergs had fraudulent intent.

Oregon's UFTA cases direct that they are resolved by looking at the factors under ORS

95.230(2) and by allowing both parties to "use circumstantial evidence to show that a transfer was

---

[3] Under Oregon law, recording an interest in property constitutes constructive notice to
anyone of the existence of the interest.  ORS 93.643(1); ORS 93.710.  Due to the unsettled state
of the law regarding whether the trigger is knowledge of the transfer or knowledge of the
fraudulent nature of the transfer, I do not rely on this factor alone.  However, it is a significant
consideration.

or was not made with intent to defraud." Doughty v. Birkholtz, 156 Or. App. 89, 97, 964 P.2d

1108, 1113 (1998) (quoting Morris v. Nance, 132 Or. App. 216, 221, 888 P.2d 571 (1994)). Thus,

contrary to Turner's assertion, it is not the enforcement of the transfer but the circumstances

surrounding the transfer that gives rise to a UFTA claim. Based on all of the facts set forth above,

Turner knew or reasonably could have discovered the transfers or fraudulent nature of the

transfers at the latest by the date of the last recorded deed of trust on August 11, 2006. See ORS

95.230(2) (transfer to an insider, retained possession or control, transfers occurred after initiation

of a lawsuit, the transfer occurred shortly before or shortly after a substantial debt was

incurred–two of the loans arose after jury verdict against David Hallberg and one was recorded the

day after the Court entered judgment against David Hallberg); see also Doughty, 156 Or. App. at

97-98, 964 P.2d 1108 (surviving summary judgment on following "badges of fraud": (1) transfer

to an insider; (2) transfer days before faced a lawsuit; (3) transfer made four months before

bankruptcy; (4) suspicious mechanics of loan; and (5) inconsistency in repayment terms). Turner

filed the Supplemental Complaint on June 20, 2011, more than four years after the transfers, and

more than a year "after the transfer was or could reasonably have been discovered by the

claimant," whether I read that language to include the fraudulent nature of the transfers or not.

ORS 95.280(1).

       In sum, Turner has failed to produce any evidence raising a genuine issue of material fact

that would preclude summary judgment to defendants Kathryn Hallberg and McCaslin on

Turner's UFTA claim.

II.    <u>Common Law Fraud</u>

Defendants similarly argue that Turner's common law fraud claim is barred by the statute of limitations.  An action for fraud must be filed within two years of the discovery of the fraud. ORS 12.110(1).  The statute's discovery rule is explained as follows:

> For purposes of that statute, a plaintiff discovers the fraud when the plaintiff knew or should have known of the alleged fraud.  Whether the plaintiff should have known of the alleged fraud depends on a two-step analysis.  First, it must appear that plaintiff had sufficient knowledge to excite attention and put a party upon his guard or call for an inquiry.  If plaintiff had such knowledge, it must also appear that a reasonably diligent inquiry would disclose the fraud.  Whether or not the plaintiff should have known of the fraud at a particular point in time is normally a question for the jury except where only one conclusion can reasonably be drawn from the evidence.

<u>Bell v. Benjamin</u>, 232 Or. App. 481, 486, 222 P.3d 741 (Or. App. 2009) (internal quotation marks and citations omitted).  Defendants rely on the deposition and trial testimony and the facts set forth above.

Just as with the UFTA claim, contrary to Turner's argument, Kathryn Hallberg's enforcement action is not the event giving rise to Turner's common law fraud claim.  I find, as a matter of law, that Turner had "sufficient knowledge to excite attention and put [her] upon [her] guard or call for an inquiry" in April 2006 after the depositions of the Hallbergs and that a "reasonable diligent inquiry would disclose the fraud."  The facts set forth above demonstrate that only one reasonable conclusion can be reached that Turner knew or should have known of the alleged fraud at the latest by August 11, 2006, the date of the last recorded deed of trust. Consequently, there is no material issue of fact remaining for a jury.

**CONCLUSION**

Based on the foregoing, defendant Kathryn Hallberg and Clay McCaslin's Motion for

Summary Judgment [348] is granted.  Turner's Supplemental Complaint against these two

defendants is dismissed with prejudice.  Turner is directed to inform the Court by 3/28/2012 why

this analysis should not also serve to bar her claims against David Hallberg.

IT IS SO ORDERED.

Dated this _____12th_____ day of March, 2012.


\_\_/s/ Garr M. King_____
Garr M. King
United States District Judge